# Exhibit 1

VIRGINIA:

IN THE CIRCUIT COURT FOR VIRGINIA BEACH

SHAWN CURRAN,

      Plaintiff,

v.     Case No. _____

AXON ENTERPRISE, INC.,

    <u>Serve:</u>
    Axon Enterprise, Inc.
    c/o Corporation Service Company, registered agent
    100 Shockoe Slip Fl. 2
    Richmond, VA  23219-4100

AXON ENTERPRISE, INC., d/b/a Taser International,

AXON ENTERPRISE, INC., formerly known as Taser International,

TASER INTERNATIONAL, INC.,

TASER,

and

RICHARD NELSON,

      Defendants.

## COMPLAINT

Plaintiff, by counsel, seeking judgment and an award of execution, jointly and/or severally, states as follows for his Complaint against Axon Enterprise, Inc., Axon Enterprise, Inc. d/b/a Taser International, Axon Enterprise Inc., formerly known as Taser International, Taser International, Inc., Taser (hereinafter referred to collectively as "Axon"), and Richard Nelson:

1

## Parties

1. Defendant Axon is a company that specializes in the manufacture and sale of law enforcement defense products, and also the training of law enforcement officers and civilians in the use of these products. At all relevant times, Axon specialized in the manufacture, sale, and training of Taser products, which are conducted energy weapons that fire small barbed darts that are intended to puncture the skin of a target, and send an electrical current through the target designed to disrupt the voluntary control of the target, and is intended to be a non-lethal means to incapacitate a target.

2. Defendant Richard Nelson was a Taser Master Instructor, and was an employee or agent of Axon and was acting within the scope of his employment or agency at all relevant times.

3. Plaintiff Shawn Curran was a Master Police Officer with the Virginia Beach Police Department at all relevant times.

## Background

4. On December 14, 2017, Axon held a Taser Conducted Energy Weapon ("CEW") instructor course at the Virginia Beach Law Enforcement Training Academy ("LETA"). This was a two-day certification course where, upon completion, participants would be certified by Axon as Taser instructors to train other individuals to become certified.

5. The CEW course required written course work, static drills, and active scenario based training. Axon provides manuals and procedures which mandate how the course work, static drills, and scenario based training is to occur.

6. On December 14, 2017, the scenario based training, designed by Axon, occurred in the gymnasium section of LETA. Defendant Nelson set-up, oversaw, implemented, ran, and supervised the scenario based training. Defendant Nelson did not have a safety officer present when the scenario based training occurred.

7. In the scenario based training, several accordion style wrestling mats were placed on end, and were arranged as walls to form a large square by, or at the direction of, Defendant Nelson. The area inside the walls was the "hot zone" where the training utilizing the Taser weapon was supposed to occur, and the area outside the walls was the "safe zone" where no training was supposed to occur.

8. There were two participants, one of which was Plaintiff Curran, who were designated as aggressors by Defendant Nelson. The aggressors wore full safety suits and helmets which were very heavy and had limited ventilation.

9. In the scenario based training, the aggressors would wait just outside of the "hot zone" in one of four areas, outside of view of the participant. The participant would enter the "hot zone" with their eyes closed. They would then open their eyes, and the aggressor would enter the "hot zone" and approach the participant. The participant had to locate the aggressor, determine if the aggressor was a "threat," and if so shoot the Taser dart at the aggressor. The full safety suit and helmet worn by the aggressor protected him from being injured by the Taser dart.

10. All training was to occur within the "hot zone," and participants were not supposed to discharge their Taser outside of the walled "hot zone" in the "safe zone."

11. Prior to Plaintiff's incident, he and the other aggressor took turns acting as aggressor in the "hot zone." When they were waiting for their turn to act as aggressor

3

on the next participant and while positioned in the "safe zone," they would take their helmet off to get fresh air, as the suits became very hot. Defendant Nelson placed a designated recovery area in the "safe zone" for aggressors to recover after their turn. However, the recovery area for the aggressors was not located a safe distance from the "hot zone" – instead it was placed immediately adjacent to one of the walls of the "hot zone" just inside the "safety zone." Defendant Nelson was aware that while waiting in the recovery area the aggressors would remove their helmets. At no point did Defendant Nelson direct them not to remove their helmets or to take them off in a different area of the "safe zone" that was farther removed from the "hot zone."

12. Prior to Plaintiff's incident, there were several training episodes where an aggressor would "charge" the participant, and the participant would back far out of the "hot zone" and into the "safety zone," and discharge the Taser from the "safety zone." Defendant Nelson was present, actively managing and conducting the training, and was fully aware that on several occasions participants discharged their Taser from or in the "safe zone." At no time prior to Plaintiff's incident did Defendant Nelson intervene or advise participants to stop discharging the Tasers outside the "hot zone" and in the "safety zone," nor did he modify the configuration of the "hot zone" he had previously established to ensure that participants did not discharge their Taser from or in the "safe zone."

13. At one point, Plaintiff finished his role as the aggressor and sat in the area Defendant Nelson designated as the aggressor recovery stations in the "safe zone," just outside of the "hot zone," with his helmet off. Defendant Nelson began a training episode and the other aggressor "charged" the participant. As Defendant Nelson

4

supervised, monitored and ran the training episode, the participant backed out of the "hot zone" and the aggressor followed. At no point did Defendant Nelson advise them to stop, cease fire, or otherwise terminate the training episode. When they were approximately 10 to 15 feet outside of the "hot zone" and in the "safe zone," the participant discharged the Taser. The metal probes missed the aggressor, and one of the probes struck Plaintiff Curran in his right eye while he was in his position at the designated recovery area within the "safe zone," causing catastrophic injuries.

### Count I – Negligence, Gross Negligence, and Willful and Wanton Negligence of Defendant Nelson and Vicarious Liability of Defendant Axon

14. The allegations set forth above are incorporated by reference.

15. At all times relevant hereto, Defendant Nelson was negligent, grossly negligent and willfully and wantonly negligent.

16. Among other things, Defendant Nelson failed to exercise reasonable care, failed to properly set up the training area, failed to have a designated safety officer present to assist with the scenario based training and ensure a safe training area, failed to properly supervise the scenario based training, failed to advise and require that participants not to discharge their Tasers in the "safe zone," failed to take any action after observing several participants exit the "hot zone" and back up into the "safe zone" and discharge their Tasers there, and failed to provide a safe recovery area for the aggressors to remove their helmets and obtain fresh air after their training episode had concluded.

17. A special relationship existed between Defendant Nelson and Plaintiff Curran. As a Taser Master Instructor in charge of the training exercise, he reasonably could have foreseen that he would be expected to take affirmative action to protect

5

participants, including Plaintiff Curran, if he knew or should have known that the training exercise was being performed in a haphazard and dangerous manner were participants were repeatedly discharging their Tasers in the "safe zone."

18. Defendant Nelson knew from past instances during the training exercise of participants discharging their Tasers in the "safe zone" that unless adequate precautions were taken participants were likely to continue discharging their Tasers in the "safe zone" and that such actions could lead to significant injury.

19. Defendant Nelson knew or should have known that the training exercise was being conducted in a haphazard and dangerous manner, and negligently failed to protect Curran from harm caused by a third party.

20. The negligence of Defendant Nelson constituted gross negligence, in that it showed such indifference to Plaintiff Curran as to constitute an utter disregard of caution amounting to a complete neglect of safety of Plaintiff Curran.

21. The negligence of Defendant Nelson constituted willful and wanton negligence, in that he acted consciously in disregard of another person's rights and acted with reckless indifference to the consequences to another person when he was aware of his conduct and was also aware from his knowledge of existing circumstances and condition that he conduct would probably result in injury to another.

22. At all relevant times, Defendant Nelson was acting within the scope of his employment or agency with Axon, and Axon is liable for the negligence, gross negligence and willful and wanton negligence of Defendant Nelson under the principles of respondeat superior or agency.

### Count II – Liability Of Axon For The Acts Of An Independent Contractor

23. The allegations set forth above are incorporated by reference, with the exception of Paragraph 2.

24. In the alternative, Defendant Nelson was an independent contractor of Axon.

25. The training scenario described above was work that Axon knew or should have recognized as likely to create a peculiar unreasonable risk of physical harm to others unless special precautions were taken. Such special precautions included the creation and enforcement of "hot zones" and "safe zones," the forbidding of Tasers to be used in the "safe zone," having a separate safety officer present to supervise the scenario based training, having a recovery area for aggressors that was removed a safe distance from the "hot zone," and the use of a heavy full body suit and helmet for aggressors.

26. At all times relevant hereto, Defendant Nelson was negligent, grossly negligent, and willful and wantonly negligent for the reasons state above.

27. Axon is vicariously liable for the negligence, gross negligence, and willful and wanton negligence of Defendant Nelson.

### Count III – Negligence and Gross Negligence of Defendant Axon

28. The allegations set forth above are incorporated by reference.

29. Axon was negligent and grossly negligent by, among other things, failing to adequately train Defendant Nelson, establishing training guidelines/requirements for the set-up and conduct of the active training scenarios that were unreasonably dangerous in that they failed to adequately protect participants not engaged in the training scenario and failed to ensure that all training involving the discharging of a Taser weapon was done within a secure "hot zone," failing to provide training weapons with tips that would

7

not cause injury, including loss of eyesight, if they struck a participant, and failing to adequately inform participants of the dangers involved in the Taser training program it designed, marketed, sold and implemented.

30. The negligence of Axon constituted gross negligence, in that it showed such indifference to Plaintiff Curran as to constitute an utter disregard of caution amounting to a complete neglect of safety of Plaintiff Curran.

### Compensatory Damages

31. As a direct and proximate result of the actions, negligence, gross negligence, and willful and wanton negligence of the defendants described above, the plaintiff suffered the following damages: severe and permanent injuries; physical pain and mental anguish, including past, present, and that which he may reasonably be expected to suffer in the future; inconvenience, including past, present, and that which he may reasonably be expected to suffer in the future; medical expenses, including past, present, and that which he may reasonably be expected to suffer in the future; disfigurement and deformity and associated humiliation and embarrassment; loss of earnings and loss of earning capacity; permanent disability; and has otherwise been damaged.

WHEREFORE, the plaintiff, Shawn Curran, respectfully prays for judgment and an award of execution against the defendants, jointly and severally, in the sum of $10,000,000, plus pre-judgment interest from December 14, 2017, plus costs and other relief as may be warranted.

Trial by jury is demanded.

SHAWN CURRAN

By: _____
  Counsel

M. Scott Bucci, Esq. (VSB #42636)
Elliott M. Buckner, Esq. (VSB #45227)
Kevin Biniazan, Esq. (VSB #92109)
Breit Cantor Grana Buckner
7130 Glen Forest Drive, Suite 400
Richmond, Virginia 23226
Telephone: (804) 644-1400
Facsimile: (804) 644-9205
sbucci@breitcantor.com
ebuckner@breitcantor.com
kbiniazan@breitcantor.com

9