UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

SHAWN CURRAN,

       Plaintiff,

v.                                   Civil No. 2:19cv617

AXON ENTERPRISE, INC., et al.,

       Defendants.

## OPINION AND ORDER

This matter is before the Court on three cross-motions for summary judgment filed respectively by Defendants Axon Enterprise, Inc. ("Axon"), ECF No. 101, and Richard Nelson ("Nelson"), ECF No. 103, and Plaintiff Shawn Curran ("Plaintiff"), ECF No. 105. For the reasons set forth below, each motion for summary judgment is **DENIED**.

### I.   FACTUAL BACKGROUND[1]

### A.   Training and Injury

On December 14, 2017, Plaintiff was injured while participating in a training session to become a TASER® Conducted Energy Weapon ("CEW") instructor. ECF No. 102, at 6. As is relevant here, TASER CEWs are designed for law enforcement and are operated by deploying a non-lethal "probe" designed to cause

---

[1] These undisputed facts are drawn from across the various summary judgment filings and the Fourth Circuit's earlier opinion in this case, ECF No. 81, and are presented as context for the analysis that follows. To the extent the Court's recitation of the facts includes a discussion of certain factual disputes, the Court does not resolve such disputes at the summary judgment stage.

the neuromuscular incapacitation of an aggressor.  Put in lay terms, the probe is a dart charged with electric current.  ECF Nos. 104-5 to 104-7.  Most of the evidence before the Court affirms that the probes used in the instant TASER training course were "inert" by design and did not deliver any electric charge or current, though at least one deponent was "not quite sure" if the training probes were completely deenergized.[2]  See ECF Nos. 52-1, 53-5, 54-7.

Plaintiff is a former police officer with the Virginia Beach Police Department ("VBPD").  ECF No. 106, at 1.  At the time of the training session at issue, Plaintiff was employed as a "defensive tactics coordinator" with the VBPD.  ECF No. 104-1. Defendant Axon manufactures TASER brand products and provides training materials to educate TASER CEW users on proper usage. ECF No. 102, at 7.  Defendant Nelson, a TASER CEW "Master Instructor," taught the training session where Plaintiff's injury occurred.[3]  ECF No. 102, at 1.  A Master Instructor is a "teach the teacher" position — the Master Instructor teaches "certified TASER users to become instructors themselves."  Id.

---

[2] In his deposition testimony, Plaintiff Shawn Curran was asked "[s]o you aren't sure if the actual training probes used delivered electricity or not?" and responded "[y]eah, I'm not quite sure. I don't believe they did, but I'm not 100 percent."  ECF No. 52-1.

[3] Nelson entered into a non-exclusive agreement with Axon titled "TASER Certified Instructor Independent Contractor Agreement."  The agreement defines Nelson's relationship with Axon as "solely that of an independent contractor," though Plaintiff contests this characterization.  ECF No. 102, at 4.

at 4.   The instructor course in which Plaintiff participated included 24 other officers.  ECF No. 81, at 3.

The TASER CEW instructor course had two main components: classroom instruction and practical, scenario-based training. The instructor course began on December 13, 2017, and ran for two days.  ECF No. 102, at 9-10.   On day one, the "classroom portion" of the training, Nelson presented a lengthy PowerPoint prepared by Axon.   Id.   This PowerPoint presentation instructed trainees on the design of the TASER CEW, explaining, among other things, "how the weapon is activated and the cartridges are deployed."   Id. at 8.   Nelson also presented product warnings to trainees and administered a written test required for TASER CEW instructor certification, both of which were written by Axon and could not be modified by the master instructors.   ECF No. 132, at 2.

On day two, the "practical training" day, Nelson oversaw the training drill that led to Plaintiff's injury.  ECF No. 102 at 6.   Performed inside a gymnasium, the "box drill" training area is delineated by several wrestling mats vertically arranged to form a large square.[4]  ECF No. 106, at 3.   One trainee, armed with a TASER CEW, waits inside this wrestling mat-constructed box until he is approached by a second "aggressor" trainee who

---

[4] The parties appear to dispute whether Axon designed and taught Nelson the box drill, ECF No. 123, at 11, and whether Nelson told the trainees that the TASER weapons were only supposed to be discharged within this protective square.  ECF No. 124, at 3.

initially hid outside the box. Id. If the armed trainee
determines that the approaching aggressor is a threat, the armed
trainee discharges the TASER CEW at the aggressor, who is clad
in a specialized body suit and helmet to avoid injury when hit
by the CEW probe. Id. This helmet includes a face shield that
fully protects the trainee's face. Because the helmet provides
complete facial protection, on the day of his injury, Plaintiff
and fellow role-playing aggressor, Jesse Morgan, did not wear
safety goggles while wearing the helmet during the drill. ECF
No. 124, at 11.

Outside the box of vertical mats, a bench was set up for
participants to "get a breather" after they completed an
individual drill. ECF No. 124-1. Plaintiff and Nelson
vehemently dispute whether this bench — located behind an
upright, vertically standing wrestling mat forming the live
action drill box — was designated by Nelson as a "safe zone"
where Plaintiff and others could "take [their] helmet[s] off"
and "didn't have to wear" safety glasses. ECF No. 124, at 12.
It is undisputed that this bench was, at the very least,
designated by Nelson as an area for participants to "get a
breather in between [scenarios]." Id. at 4.

Throughout the training day, multiple trainees had backed
out of the box before firing a TASER CEW at the role-playing
aggressor, though Plaintiff claims that Nelson had instructed

4

trainees to limit the action to inside the box. Id. at 3. After backing out of the box, some of the participants fired the TASER CEW close to the "safe zone" bench. ECF No. 131, at 2. Nelson did not stop the drills that ranged outside the box. Id. at 3.

Plaintiff had performed the role of aggressor throughout the training day, wearing the full body protective suit while advancing on an armed trainee. ECF No. 104, at 9. When his injury occurred, Plaintiff was resting on the bench immediately after participating in a drill as the aggressor. Id. at 10. During the 40th live-fire scenario, Plaintiff took his helmet off, due in part to a desire to cool off after wearing the "extremely hot" body suit. ECF No. 124, at 4. Retreating from an advancing aggressor, an armed trainee had backed out of the box before firing the TASER CEW while Plaintiff sat downrange. ECF No. 104, at 9. The TASER CEW probe ricocheted off the gym floor before striking Plaintiff's right eye — he was not wearing safety goggles. Id. at 10. According to Axon, Plaintiff's unfortunate eye injury is the only eye injury to have ever occurred during two decades of TASER CEW training. ECF No. 104, at 8.

## II. PROCEDURAL BACKGROUND

On October 21, 2019, Plaintiff filed the instant suit against Defendants Axon and Nelson in the Virginia Beach Circuit

Court.  ECF No. 1, at 1.  Axon removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.  Id.  The Court has subject matter jurisdiction through diversity jurisdiction, 28 U.S.C. § 1332(a), and it is undisputed that Virginia law controls.  In late 2019 and early 2020, Axon and Nelson filed respective motions to dismiss, ECF Nos. 8, 29.  Another judge of this Court who originally presided over this case took both motions under advisement after ordering limited discovery on "(1) whether Defendant Nelson was an employee, agent, or independent contractor of Defendant Axon; and (2) whether a special relationship existed between Defendant Nelson and Plaintiff Curran such that the Court could impose liability for the conduct of a third party."  ECF No. 48, at 2.  Axon thereafter filed a motion for summary judgment, ECF No. 49, as did Nelson, ECF No. 51.

On July 13, 2021, the Court granted Nelson's motion for summary judgment, and partially granted Axon's motion for summary judgment on Plaintiff's vicarious liability claim.  ECF No. 71, at 15.  Two months later, the Court granted Axon's motion to dismiss Plaintiff's remaining claim of direct negligence against Axon.  ECF No. 76, at 9.  Plaintiff appealed, and on January 9, 2023, the Fourth Circuit vacated the Court's ruling on Plaintiff's negligence claim against Nelson and remanded for further proceedings.  ECF No. 81, at 3.

Upon remand, this case was reassigned to the undersigned judge.  After additional discovery took place, on December 4, 2023, Axon filed a motion for summary judgment on Plaintiff's remaining claim involving the alleged vicarious liability of Axon for the negligence of Nelson, ECF No. 101, and Nelson filed a summary judgment motion later that same day, ECF No. 103. Plaintiff filed a cross motion for summary judgment on the issue of Axon's vicarious liability.  ECF No. 105.  All motions are now fully briefed and ripe for review.  See ECF Nos. 116-132.

### III. STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that a district court shall grant a motion for summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-48 (1986) (emphases in original).  "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party."  Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012).

7

The initial burden on summary judgment falls on the moving party, but once a movant properly presents evidence supporting summary judgment, the nonmoving party may not rest upon the mere allegations of the pleadings, but instead must set forth specific facts in the form of exhibits and sworn statements illustrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). To successfully defeat a motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," or the "existence of a scintilla of evidence." Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 330 F. Supp. 2d 668, 671 (E.D. Va. 2004) (citations omitted).

Although the Court is not to weigh evidence or make credibility determinations at the summary judgment phase, the Court is required to "determine whether there is a genuine issue for trial." Tolan v. Cotton, 572 U.S. 650, 656 (2014) (quoting Anderson, 477 U.S. at 249). When assessing whether there is a genuine issue for trial, the Court must determine whether the evidence presents a "sufficient disagreement to require submission to a jury or whether [the evidence] is so one-sided that one party must prevail as a matter of law." McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014) (quoting Anderson, 477 U.S. at 251-52). In making its determination, "the district court must view the evidence in the

light most favorable to the nonmoving party." <u>Jacobs v. N.C.</u>
<u>Admin. Off. of the Cts.</u>, 780 F.3d 562, 568 (4th Cir. 2015)
(cleaned up) (quoting <u>Tolan</u>, 572 U.S. at 657).

When faced with cross-motions for summary judgment, the
Court must "consider each motion separately on its own merits to
determine whether either of the parties deserves judgment as a
matter of law." <u>Defs. of Wildlife v. N.C. Dep't of Transp.</u>, 762
F.3d 374, 392 (4th Cir. 2014) (quoting <u>Bacon v. City of</u>
<u>Richmond</u>, 475 F.3d 633, 638 (4th Cir. 2007)). In so doing, the
Court must "resolve all factual disputes and any competing,
rational inferences in the light most favorable to the party
opposing that motion." <u>Id.</u> (quoting <u>Rossignol v. Voorhaar</u>, 316
F.3d 516, 523 (4th Cir. 2003)).

## IV. DISCUSSION

The Court will first address Nelson's summary judgment
motion, then Axon's motion, and finally Plaintiff's motion.

### A. Nelson's Motion for Summary Judgment

Nelson seeks summary judgment on Plaintiff's sole claim
against him — negligence. Nelson argues that Plaintiff assumed
the risk of eye injury when he took off his eye protection
during an active law enforcement exercise and that he was
contributorily negligent by removing his eye protection. Either
defense, according to Nelson, bars Plaintiff's negligence claim
against him. ECF No. 103, at 1. The Court first addresses

9

Nelson's argument on assumption of risk and then turns to contributory negligence.

## 1. Assumption of the Risk

Under Virginia law, a person's voluntary assumption of the risk of injury from a known danger operates as a "complete bar to recovery for a defendant's alleged negligence in causing that injury." Manchanda v. Hays Worldwide, LLC, 142 F. Supp. 3d 465, 473 (E.D. Va. 2015) (quoting Thurmond v. Prince William Prof'l Baseball Club, Inc., 265 Va. 59, 64, 574 S.E.2d 246, 259 (2003)). To establish that a plaintiff assumed the risk of injury, a defendant must demonstrate that the plaintiff "(1) fully appreciated the nature and extent of the risk; and (2) voluntarily incurred that risk." Manchanda, 142 F. Supp. 3d at 473. The focus of this analysis "is on the risk alleged to have caused the injury, not merely the risk inherent in an activity." Id.; see also Amusement Slides Corp. v. Lehmann, 217 Va. 815, 819, 232 S.E.2d 803, 806 (1977). Under Virginia law, the controlling standard is subjective, requiring an inquiry into "what the plaintiff fully appreciated, not what a reasonable person would have known." Manchanda, 142 F. Supp. 3d at 473. The defense of assumption of risk ordinarily presents a jury question "unless reasonable minds could not differ on the issue." Thurmond, 265 Va. at 64, 574 S.E.2d at 250.

Nelson argues that Plaintiff fully appreciated the nature and extent of the risk of eye injury during TASER CEW training and therefore assumed the risk as a matter of law. ECF No. 104, at 10. Nelson supports this argument by citing Plaintiff's deposition testimony, where Plaintiff acknowledged his understanding of the Instructor Release form and TASER CEW product warnings: "I [Plaintiff Shawn Curran] assumed the risk of the warnings that we've gone over numerous times about the penetration into the eye and that it does cause injury and that it's dangerous." Id. at 6. Indeed, Nelson reminds the Court that Plaintiff testified that "anybody entering the gym needed to wear the protective eye gear," further asserting that immediately before Plaintiff was injured, he saw a TASER discharge close to the so-called safe zone and was thereby alert to the risks of eye injury in the safe zone.[5] Id. at 10.

In response, Plaintiff argues that he did not assume the risk that Nelson would manage and execute the training session in a negligent manner, permitting trainees to fire TASER CEW probes from outside the box and in the direction of the safe

---

[5] Nelson supports this argument by citing the blurry video of the training session, which purports to demonstrate that Plaintiff participated in drills that ranged outside the box and sat on the safe zone bench while other drill sessions transpired nearby. However, the video, on its own, fails to establish that Plaintiff fully appreciated the risk of a probe bouncing into the safe zone, as it is unclear whether previously deployed probes had bounced into the safe zone, nor is it clear to what extent Plaintiff observed the nearby probe deployments while recuperating on the bench. See ECF No. 104-9A.

zone.  ECF No. 124, at 21.  Plaintiff insists that Nelson stated that Plaintiff and others could take their helmets off in the safe zone, and relies on the deposition testimony of Jesse Morgan, a sheriff and fellow trainee on the day of Plaintiff's injury, to corroborate Nelson's statement to this effect. Morgan testified that Nelson "said this will be your safe zone [(the bench behind a protective wrestling mat)].  If you are in this area, you can take it [(the protective helmet)] off." Id. at 10.  The logic of having a rest area was arguably apparent as it is undisputed that the full body protective gear made the role-playing aggressor extremely hot, and participants desired to take off their helmets during breaks to moderate their own temperatures.  ECF No. 124, at 16.  Therefore, Plaintiff argues he did not fully appreciate the nature and extent of the risk of eye injury in the safe zone due to Nelson's confirmation that helmets could be removed and Nelson's affirmation that "[Plaintiff and Morgan] didn't have to have [safety glasses]" while in the safe zone.  Id. at 11.

Based on the conflicting evidence, the Court finds that Nelson fails to carry his burden to demonstrate on summary judgment that Plaintiff assumed the risk of an eye injury while resting without his helmet on in the designated rest area.  The record before the Court presents several genuine issues of material fact, including whether Nelson as master instructor

12

told Plaintiff, Jesse Morgan, or fellow trainee Chris Cook that the "bench area" was a "safe zone" where participants could "take [their] helmet[s] off" and "didn't have to" wear their safety goggles.[6]  ECF No. 124, at 4-11.  While Nelson insists that Plaintiff was aware of the risk of eye injury in the safe zone, the contested facts prevent summary judgment because they affect whether Plaintiff "<u>fully</u> appreciated the <u>nature</u> and <u>extent</u> of the risk" of eye injury while seated in the instructor-designated safe zone, which is one element of assumption of the risk that Nelson must prove to prevail on this defense.[7]  <u>Burns v. Washington Metro. Area Transit Auth.</u>, No.

---

[6] Chris Cook is a lieutenant with the Newport News Shipbuilding Security Department and was a fellow trainee on the day of Plaintiff's injury.  In response to the deposition inquiry "Do you recall Master Instructor Nelson saying that the area outside of the mats was a safe zone?", Cook stated "I believe I heard him say that . . ."  ECF No. 124, at 5.

[7] It is undisputed that Plaintiff voluntarily took his protective equipment off, so the issue before the Court is only whether Plaintiff fully appreciated the nature and extent of the risk of eye injury.  The Virginia Supreme Court's holding in <u>Amusement Slides</u>, 217 Va. at 820, 232 S.E.2d at 806, is instructive on this issue.  The <u>Amusement Slides</u> court found that reasonable men could differ as to whether the plaintiff fully appreciated the nature and extent of the risk of going down the amusement park slide that injured him.  The plaintiff there had repeatedly ridden a similar amusement slide, and "moments before he incurred his own injury, he witnessed . . . a young girl being injured on the slide."  <u>Id.</u> at 819, 232 S.E.2d at 805.  On these facts, the Virginia Supreme Court still rejected the defendant's contention that the plaintiff had assumed the risk of injury from the slide, finding that the plaintiff did not assume the risk of the slide employee's "additional negligent act" of failing to slow him down on the slide.  <u>Id.</u>  As the Court observed, "the slide's slickness was noticeable from [the plaintiff's] casual glance, nevertheless, it was for the jury to decide . . . whether employee inattention was a hazard assumed by this plaintiff under these circumstances."  <u>Id.</u>  So too here.  It is for a jury to decide whether Nelson's tacit permission to trainees to range outside the box, endangering those in the instructor-designated safe zone, was a hazard assumed by Plaintiff.

1:12-cv-123, 2012 WL 2878250, at *2 (E.D. Va. July 12, 2012) (emphasis added); see also Manchanda, 142 F. Supp. 3d at 473 (denying Defendant's summary judgment motion on assumption of the risk because evidence demonstrated that decedent understood the "general risks of scuba diving, but not that [decedent] fully appreciated the risk of diving in conditions allegedly made more dangerous by Defendants' negligence."). Nelson's motion for summary judgment based on Plaintiff's assumption of the risk is therefore **DENIED**.

### 2. Contributory Negligence

Nelson next argues that Plaintiff was contributorily negligent as a matter of law. Contributory negligence, a distinct legal concept from assumption of the risk, is a defense based on an objective "reasonable person" standard. On summary judgment, the defendant-movant must demonstrate that the "plaintiff failed to act as a reasonable person would have acted for his own safety under the circumstances." Ponirakis v. Choi, 262 Va. 119, 124, 546 S.E.2d 707, 711 (2001); see also Lampe v. Kim, 105 F. App'x 466, 469 (4th Cir. 2004). The "essence of contributory negligence is carelessness." Ponirakis, 262 Va. at 125, 546 S.E.2d at 711. Determining whether a party was contributorily negligent is "an issue of fact for the jury unless reasonable minds could not differ on the issue." Id.

Nelson argues that the Court should find contributory negligence as a matter of law because Plaintiff, by removing his helmet (his only eye protection) near a live-fire drill on moving targets, failed to act as a reasonable person would have acted for his own safety. ECF No. 104, at 16-17. In his response, Plaintiff insists that he acted reasonably for his own safety under the circumstances because the "sim suits [that Plaintiff wore during the drill] are extremely hot," and Nelson had supposedly established the safe zone for trainees to take off their helmets and "get a breather." ECF No. 124, at 16. Plaintiff claims that Nelson affirmed that trainees did not "have to have" safety goggles in the safe zone and permitted "various participants to go without eye protection." Id. at 11, 17.

Based on the competing versions of the facts, reasonable minds could differ as to whether Plaintiff was contributorily negligent when he removed his helmet while sitting in the safe zone. Viewing the evidence in the light most favorable to Plaintiff, a jury could reasonably find that the master instructor's assurances — including that the "safety area is for [participants] to relax, [and] take [their] equipment off" — were sufficient for a reasonable person to conclude that it would be safe to briefly remove their helmet while on the bench. After all, the aggressors were clad in "extremely hot"

15

protective suits and trying to avoid overheating by taking their helmets off to "get a breather." ECF No. 124, at 17. Additionally, the location of the bench was shielded by a vertical wrestling mat and two officers testified that they believed that the CEW's were not supposed to be discharged outside the vertical protective mats. ECF No. 124, at 3. Morgan's deposition testimony further strengthens this conclusion: Nelson told Morgan and Plaintiff that they "didn't have to have [safety glasses]" in the safe zone. Id. The issue of contributory negligence is therefore reserved for the jury, and Nelson's summary judgment motion is **DENIED**.

### B. Axon's Motion for Summary Judgment

Following the previously assigned judge's ruling granting Axon's motion to dismiss, ECF No. 76, Plaintiff's sole remaining claim against Axon is vicarious liability for Nelson's alleged negligence. ECF No. 102, at 1. Axon argues that it cannot be held liable for Nelson's actions and thus should be awarded summary judgment on Plaintiff's vicarious liability claim. Id. The Court briefly sets out the applicable law below before addressing Axon's argument.

Under Virginia law, "the doctrine of respondeat superior imposes tort liability on an employer for the negligent acts of its employees, i.e., its servants, but not for the negligent acts of an independent contractor." Sanchez v. Medicorp Health

16

_Sys._, 270 Va. 299, 305, 618 S.E.2d 331, 334 (2005); _see also_ Restatement (Second) of Torts § 409 ("[T]he employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants.").[8]

An independent contractor is "one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result." _MacCoy v. Colony House Builders Inc._, 239 Va. 64, 68, 387 S.E.2d 760, 762 (1990). In contrast, if under the contract the party for whom the work is being done may "prescribe not only what the result shall be, but also direct the means and methods by which the other shall do the work, the former is an employer, and the latter an employee." _MacCoy_, 239 Va. at 68, 387 S.E.2d at 762 (quoting _Craig v. Doyle_, 179 Va. 526, 531, 19 S.E.2d 675, 677 (1942)).

To determine whether a person is an independent contractor or employee, Virginia courts look to whether a putative employer exerts "control or [has the] right to control the methods or details of doing the work, not control of the results." _Wells v. Whitaker_, 207 Va. 616, 623, 151 S.E.2d 422, 429 (1966).

---

[8] This Court's use of the phrase "employer of an independent contractor" does not designate any employer-employee status, nor should it muddle the distinction between an employee and an independent contractor. The "employer" of an independent contractor simply refers to the entity or person who contracts for the independent contractor's services. This language, "the employer of an independent contractor," is consistent with Virginia case law, so the Court uses it here. _See_ _Norfolk & W.R. Co. v. Johnson_, 207 Va. 980, 983, 154 S.E.2d 134, 137 (1967).

Accordingly, "the power of [the alleged employer to] control is the determining factor in ascertaining the alleged agent's status," and "[a]ctual control . . . is not the test; it is the right to control which is determinative." Wynn's Extended Care, Inc. v. Bradley, 619 F. Appx. 216, 217 (4th Cir. 2015) (cleaned up) (emphasis added); see also Texas Co. v. Zeigler, 177 Va. 557, 569, 14 S.E.2d 704, 708 (1941). Importantly, the "relationship of the parties does not depend upon what the parties themselves call it, but rather in law what it actually is." Murphy v. Holiday Inns, Inc., 216 Va. 490, 492, 219 S.E.2d 874, 876 (1975).

Whether a person is an independent contractor or an employee is fact dependent and generally a question for a jury. Atkinson v. Sachno, 261 Va. 278, 284, 541 S.E.2d 902, 905 (2001). A court decides the question only when reasonable minds could not differ. MacCoy, 239 Va. at 68, 387 S.E.2d at 761.

### 1. Nelson's Employment Status

The thrust of Axon's summary judgment argument is that Nelson was not Axon's employee, but rather was an independent contractor, and because Axon is not liable for the actions of an independent contractor, Plaintiff's vicarious liability claim fails as a matter of law. ECF No. 102, at 1. To support this argument, Axon first points to the "Independent Contractor Agreement" with Nelson, noting that the agreement plainly states

18

that Nelson is an independent contractor, not "an agent [or] employee" of Axon.  Id. at 15.  Axon stresses that, "far from simply being a label," the independent contractor relationship was supported in practice because Nelson was never on Axon's payroll, was employed full-time by the West Virginia Natural Resource Police, and had discretion to decline any of Axon's requests to teach a course.  Id. at 16.  Conversely, Plaintiff argues that there is a genuine dispute of material fact as to whether Nelson was Axon's employee, and thus the issue of Nelson's employment status should be submitted to a jury.  ECF No. 123, at 17-19.

After reviewing the summary judgment record and drawing all reasonable inferences in Plaintiff's favor, the Court finds that "the facts do not lead to a single conclusion," rendering Nelson's employment status "a question of fact for the jury." McDonald v. Hampton Training Sch. for Nurses, 254 Va. 79, 87, 486 S.E.2d 299, 304 (1997).  As argued by Plaintiff, Axon clearly controlled at least some of the means and methods to accomplish the result of the trainees' certification.  ECF No. 123, at 8.  Among these means and methods, Axon provided the PowerPoint presentation, the training videos, the warnings, and the written test.  Id. at 9.  Nelson was required to present the lengthy Axon PowerPoint without modification and had to administer and grade an Axon-designed written test according to

Axon's standards. Id. at 9.   Indeed, Nelson's agreement with Axon stipulates that Nelson "agrees not to deviate from, diminish, dilute, minimize or contradict any Training Materials." Id. at 15.

Moreover, since the Court must construe the evidence in the light most favorable to Plaintiff as the nonmovant, Nelson was required to conduct, without alteration, the "static drills" that Axon taught him.   ECF No. 123, at 11.   Nelson even testified that he was taught by Axon employees the "box drill" that ultimately injured Plaintiff, and Nelson acknowledged that he set up the drill that day just as he had been instructed to by Axon employees in a previous training session. Id. at 13-14. What's more, Nelson testified that "I thought I was a part time employee" of Axon's, he is directly paid by Axon, he received his own TASER CEW training exclusively from Axon, he may not subcontract Axon work to someone else, and either party may terminate the agreement at any time for any reason. Id. at 14-15.   The Court does not assess the credibility of this evidence at the summary judgment stage, but simply concludes that it is sufficient for a reasonable jury to find that Axon exercised control over the "means and methods" of Nelson's work as master instructor, for instance through Axon's reservation of the right to terminate Nelson at will and the prohibition on Nelson's

subcontracting any aspect of the work.[9]  See Texas Co., 177 Va. at 567, 14 S.E.2d at 708 (finding that the right of either party to terminate the contracted-for services at will without incurring liability suggested an employer-employee relationship); see also Hann v. Times-Dispatch Pub. Co., 166 Va. 102, 108, 184 S.E. 183, 186 (1936) (holding that the plaintiff, a newspaper delivery boy, was an employee in part because he could not subcontract his work to others, was subject to discharge at will, and could not deviate from the prescribed newspaper route).  A reasonable jury could therefore conclude that Nelson was an employee of Axon's, and thus Axon's motion for summary judgment on this issue is **DENIED**.

## 2. Independent Contractor Exception

Even if the Court found that Nelson was an independent contractor as a matter of law, summary judgment would still not be appropriate due to an exception to the general rule of employer non-liability for the acts of an independent contractor.  As stated above, the default rule "in Virginia, as elsewhere, is that the employer of an independent contractor is not liable for physical harm caused to another by an act or

---

[9] Axon stresses that it "did not control, nor could it, any portion of the Day 2 practical training during which Curran was injured."  ECF No. 132, at 3.  But Axon fails to adduce any case law suggesting that the Court should discount the control Axon exercised over Nelson on day one of only a two-day training course.  And there are enough indicia of control by Axon to find that the evidence "does not admit of but one conclusion."  McDonald, 254 Va. at 87, 486 S.E.2d at 304.

omission of the contractor or his servants." Norfolk & W.R. Co.
v. Johnson, 207 Va. 980, 983, 154 S.E.2d 134, 137 (1967).
However, one exception to this general rule provides that if the
independent contractor's work will create "a peculiar risk of
bodily harm to others unless special precautions are taken,"
then an employer can be held liable for the independent
contractor's actions. Id. at 986, 154 S.E.2d at 138; see also
T.E. Ritter Corp. v. Rose, 200 Va. 736, 742, 107 S.E.2d 479, 483
(1959) (concluding that the exception is applicable when "an
independent contractor . . . do[es] work of an inherently
hazardous character . . . [(where)] it is likely that injurious
consequences to others may arise, unless all reasonable
precautions [are] taken to the end that third persons may be
protected against injury." (emphasis added)); see also Norfolk &
W.R. Co., 207 Va. at 986, 154 S.E.2d at 138 (citing Restatement,
Torts § 416 (1934) which provides that "one who employs an
independent contractor to do work which the employer should
recognize as necessarily . . . involving a peculiar risk of
bodily harm to others unless special precautions are taken, is
subject to liability for bodily harm caused to them by the
failure of the contractor to exercise reasonable care to take
such precautions.").[10]

---

[10] See also Kinsey v. Spann, 139 N.C. App. 370, 374, 533 S.E.2d 487, 491
(2000) (explaining that the exception applies when an independent
contractor undertakes "inherently dangerous activities," defined as

22

In a seminal case addressing the exception, the Virginia Supreme Court cautioned that the exception should not be interpreted too broadly. Norfolk & W.R. Co., 207 Va. at 987, 154 S.E.2d at 139. The Virginia Supreme Court rejected the argument that the special precautions exception should apply to the work of transmitting hot steam through a specialized steam hose, explaining in the context of that case that "[while] uncontrolled steam is dangerous . . . the transmission of steam in its normal and ordinary mode does not, in the natural course of things, create a condition involving a peculiar risk of bodily harm unless special precautions are taken." Id. at 988, 154 S.E.2d at 140. In contrast, in T.E. Ritter, the Virginia Supreme Court found the exception applicable when the danger posed by an independent contractor's movement of heavy equipment across train tracks required warning oncoming trains of the hazard. T.E. Ritter, 200 Va. at 743, 107 S.E.2d at 484. The Virginia Supreme Court also applied the exception in Bowers, where construction work had destabilized canal banks, thus requiring the "special precaution" of shoring the unstable banks. Bowers v. Martinsville, 156 Va. 497, 515, 159 S.E. 196, 202 (1931).[11]

---

activities that carry with them certain attendant risks, but whose risks "can be eliminated by taking certain special precautions.").

[11] The Roanoke Circuit Court's application of this exception in Harman v. Nininger, 83 Va. Cir. 280, 281, 2011 Va. Cir. LEXIS 262, at *3 (2011) is

Although "special precautions" may be found as a matter of law, the application of this exception "often must be left for the jury to consider in light of the particular conditions and circumstances of each case."[12] Kinsey, 139 N.C. App. at 376, 533 S.E.2d at 492.  To that end, a jury may be required to consider whether an activity poses the requisite "peculiar risk of bodily harm." Norfolk & W.R. Co., 207 Va. at 988, 154 S.E.2d at 140.

After reviewing the parties' arguments, the Court finds that Axon has failed to carry its summary judgment burden on this issue.  As noted, Axon argues that this exception is inapplicable as a matter of law.  ECF No. 102, at 19.  But genuine issues of material fact prevent the Court from deciding whether the special precautions exception applies to the TASER CEW training at issue.  Construing the evidence in the light most favorable to Plaintiff, a reasonable jury could find the special precautions exception applicable because TASER CEW training poses a "peculiar risk of bodily harm to others" unless special precautions are taken.  Norfolk & W.R. Co., 207 Va. at 988, 154 S.E.2d at 140.  Indeed, TASER CEW trainees use a device

---

also instructive.  The Harman court found that "digging a hole and installing a water line in the middle of a well-traveled highway is an inherently dangerous activity and requires special precautions to be taken for the protection of the public." Id.

[12] Other courts have explained that the special precautions exception may apply when measures are taken to mitigate the risks of an "inherently dangerous" activity; whether an activity is "inherently dangerous" is often an issue for a jury. See Amtrak v. Rountree Transp. & Rigging, 286 F.3d 1233, 1249 (11th Cir. 2002).

designed to incapacitate threats to law enforcement by discharging sharp, deenergized probes at a role-playing aggressor. Axon's Product Warning states "that TASER probes have small dart points which may cause penetration injury to blood vessels, arteries, [(and)] internal organs," among other serious risks. ECF No. 106, at 6.

Moreover, training participants playing the role of aggressor must wear robust full-body suits with face shields to protect themselves from these probes. This suit is designed to "handle the conductivity of the brunt of the TASER." Id. at 12. In finding the special precautions exception applicable when an exposed electrical wire shocked the plaintiff, the North Carolina Supreme Court emphasized that the danger of electricity made the construction work at issue in that case inherently dangerous. Peters v. Carolina Cotton & Woollen Mills, 199 N.C. 753, 754, 155 S.E. 867, 868 (1930). Relatedly, a jury could reasonably find that Nelson was hired to do work involving a "dangerous instrument," exposing Axon to liability under Virginia law for Nelson's negligence as an independent contractor. See DuPuy-German v. Perwaiz, 107 Va. Cir. 358, 363, 2021 WL 6550405, at *10 (2021) (noting that it is "well settled in Virginia and elsewhere that one who engages an independent contractor to . . . use a dangerous instrument . . . cannot relieve himself of responsibility, if the independent contractor

25

fails to exercise due care."). Accordingly, to the mind of a reasonable juror, the hazards and risks associated with TASER CEW training may pose a "peculiar risk of bodily harm."

Finally, as the Virginia Supreme Court noted in <u>T.E. Ritter</u>, the special precautions exception is more likely to apply when precautions are required to protect third persons against injury. <u>T.E. Ritter</u>, 200 Va. at 742, 107 S.E.2d at 483. Here, observers of TASER CEW training were all required to wear eye protection, additional evidence that counsels against granting Axon's motion. Just as the Virginia Supreme Court noted in <u>T.E. Ritter</u> that there was "ample evidence" demonstrating that the employer knew and recognized the risk of the activity at issue, here, a factfinder need look no further than the PowerPoint presentation <u>prepared by Axon</u> to find that Axon was aware of the dangerousness of discharging a probe from the TASER CEW. <u>Id.</u> at 741, 107 S.E.2d at 483.

In sum, a reasonable jury could find that TASER CEW training poses a peculiar risk of bodily harm to others that requires special precautions — a full-body protective suit for role-playing aggressors and eye protection for anyone in the line of fire. Axon therefore has not carried its summary judgment burden on this issue, and its motion for summary judgment is **DENIED**.

## C. Plaintiff's Motion for Summary Judgment

Plaintiff argues in his cross-motion for summary judgment that the above-discussed "special precautions" exception should apply here as a matter of law.[13]   ECF No. 105, at 1.   To that end, Plaintiff maintains that if Nelson is found to be an independent contractor, the "special precautions" exception necessarily applies and holds Axon liable for Nelson's negligence.   ECF No. 106, at 2.

In response, Axon contends that Plaintiff "conflates 'special precautions' with common sense safety measures, and [(incorrectly)] suggests Axon's warnings, protocols, and safety equipment are themselves evidence of the 'special precautions.'" ECF No. 122, at 6.   Axon stresses that the "fact that an activity involves inherent dangers or potential hazards does not, by itself, give rise to the exception."   Id. at 7.

In this cross-motion for summary judgment, Plaintiff is now the movant, so the Court construes all evidence in the light most favorable to the nonmovant, Axon.   The Court concludes that Plaintiff has failed to carry his burden on summary judgment for the application of the "special precautions" exception to this case.   There is a genuine issue of material fact as to whether TASER CEW training poses a "peculiar risk of bodily harm to

---

[13] While Plaintiff argues in other filings that Axon was "Nelson's common-law employer/principal," Plaintiff concedes that "whether Axon and Nelson stood in a common-law employer/employee relationship is here a question of fact for the jury."   ECF No. 106, at 2.

others" unless "special precautions" are implemented.   Norfolk &
W.R. Co., 207 Va. at 988, 154 S.E.2d at 140.   There is enough
evidence for a reasonable jury to find that TASER CEW training
did not pose the requisite peculiar risk.   For example, video
evidence before the Court reflects that observers, clad in
civilian clothing, casually watched the box drill unfold inside
an ordinary gym.   Indeed, the drill perimeter was established by
standing up common wrestling mats, and the only protective
equipment required for observers and most participants was eye
protection.   The TASER CEW probes were deenergized and had their
sharp points shortened for training protection.   Additionally,
Plaintiff's eye injury is the only eye injury known to have
occurred in Axon's two-decades of TASER training.   ECF No. 104,
at 8.   When this evidence is considered in the context of other
Virginia cases where the court declined to apply the exception,
it is clear that summary judgment is not appropriate on this
record.   See, e.g., Epperson v. De Jarnette, 164 Va. 482, 489,
180 S.E. 412, 415 (1935) (declining to apply the exception
because a sawmill that started a fire was "not so inherently
hazardous" to make an owner liable when he had surrendered its
use to another).

Furthermore, to the extent that Plaintiff argues that the
use of a full-body protective suit constitutes a "special
precaution" as a matter of law, the Court disagrees.   ECF No.

28

106, at 12.   Plaintiff fails to carry his summary judgment burden on this issue.   Unlike in T.E Ritter, the use of full-body protective suits in this type of TASER CEW training is apparently a routine safety measure designed to protect the role-playing aggressor, not an exceptional precautionary measure to warn unsuspecting third parties of impending danger.   T.E. Ritter, 200 Va. at 743, 107 S.E.2d at 484; see also Harman, 83 Va. Cir. at 281, 2011 Va. Cir. LEXIS 262, at *3 (finding the exception applicable where an independent contractor dug a hole and installed a water line in the middle of a well-traveled highway, thereby requiring special precautions for the protection of the public).[14]   And the use of protective suits is plainly not a special precaution of the same kind or degree as the shoring of infirm canal banks during bridge construction in Bowers.   156 Va. at 515, 159 S.E. at 202.   The Court therefore **DENIES** Plaintiff's motion for summary judgment.

## V. CONCLUSION

For the reasons explained in detail herein, the summary judgment motions filed respectively by Axon, ECF No. 101,

---

[14] Plaintiff does not appear to address the Virginia Supreme Court's observation in Norfolk & W.R. Co. that because the injury there "resulted from negligence in the manner of doing the work and not from the nature of the work itself," the special precautions exception was less likely to apply. 207 Va. at 988, 154 S.E.2d at 140.   Similarly, a jury could reasonably conclude that Plaintiff's injury here resulted from Nelson's negligent oversight of the training drill, not from the inherently dangerous nature of the training itself.

Nelson, ECF No. 103, and Plaintiff, ECF No. 105, are each **DENIED** due to the existence of genuine disputes of material facts directly relevant to the issues raised in such motions.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all Counsel of Record.

**IT IS SO ORDERED.**

/s/
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January 24 , 2024

30